# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RALPH E. JOCKE, *et al.*, | ) | CASE NO.:   1:21-cv-01310 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MEDINA, OHIO | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## I. BACKGROUND

The conflict brought before this Court between Plaintiffs, Ralph E. Jocke ("Jocke"), Patricia A. Walker ("Walker"), and Keith A. Rasey ("Rasey") (collectively, "Plaintiffs"), and Defendant City of Medina, Ohio ("Medina") began in 2019 when Medina and Medina County initiated a joint courthouse project. (Compl. ¶¶ 7, 11-12, ECF No. 1.) Plaintiffs desired increased public input on the joint courthouse project. (*Id.* at ¶¶ 9-10, 15, 20-21.) In 2019, a petition drive collected enough signatures to include a ballot initiative related to the joint courthouse project on Medina's November 2020 election ballot (hereinafter "2020 Ballot Initiative"). (*Id.* at ¶ 20.) The 2020 Ballot Initiative asked the public to vote on whether Medina could participate in the joint courthouse project without further public vote. (*Id.* at ¶ 21.) Plaintiffs allege Medina utilized public resources to oppose the 2020 Ballot Initiative petition drive as well as the 2020 Ballot Initiative itself, and, throughout these oppositions, violated Plaintiffs' constitutional rights. (*Id.* at ¶¶ 22-64.)

### A. Conflict During the Petition Drive for the 2020 Ballot Initiative and Before the November 2020 Election

Plaintiffs assert Medina began violating their constitutional rights during the petition drive to include the 2020 Ballot Initiative on Medina's November 2020 election ballot. Specifically, Jocke

alleges that he attempted to gather signatures during the petition drive from a public sidewalk, but Medina police officers prevented him from doing so. (*Id.* at ¶ 60.) Medina's public streets were closed at the time for a Farmer's Market. (*Id.* at ¶ 59.) According to Plaintiffs, despite Medina police officers precluding Jocke from collecting signatures for the petition drive in a public space, Medina had a table at the Farmer's Market where Medina City Council members "urged people to not sign the petition" for the 2020 Ballot Initiative. (*Id.* at ¶ 61.)

Despite this alleged opposition, the petition drive ultimately collected enough signatures to include the 2020 Ballot Initiative on Medina's November 2020 election ballot. (*Id.* at ¶ 20.) Plaintiffs generally assert that upon the completion of the petition drive, Medina maintained its table at the Farmer's Market events, this time to distribute information against the 2020 Ballot Initiative itself. (*Id.* at ¶ 61.) Walker claims that she requested a table at the Farmer's Market events to distribute information in favor of the 2020 Ballot Initiative, but this request was denied. (*Id.* at ¶ 62.)

In addition to the Farmer's Market table, Plaintiffs claim Medina employed other tactics to systematically oppose the 2020 Ballot Initiative. In October 2020, Medina "made the multipurpose meeting room in Medina City Hall available for a Press Conference," allegedly to publicly oppose the 2020 Ballot Initiative. (*Id.* at ¶ 31.) Despite being informed that the press conference was not open to the public, and while acknowledging "access to City Hall was limited due to Covid-19," Jocke entered Medina's City Hall and attempted to participate in the press conference. (*Id.* at ¶¶ 32, 34-37. *See also* Compl. Ex. 3, ECF No. 1-5.) Before he could participate, Medina's Mayor informed Jocke he could not attend the press conference and instructed a Medina police officer to escort Jocke out of Medina's City Hall. (Compl. ¶¶ 38-39, 120, ECF No. 1.)

Additionally, Medina has an access channel called "Medina TV," which is staffed by Medina employees and utilizes Medina property. (*Id.* at ¶¶ 26, 28.) Plaintiffs claim Medina TV played videos of Medina's Mayor and Medina's City Council opposing the 2020 Ballot Initiative, so Plaintiffs requested "equal time" to "present [their] view of the facts" of the 2020 Ballot Initiative on Medina TV. (*Id.* at ¶¶ 26, 29-30. *See also* Compl. Ex. 1, ECF No. 1-3.) Medina TV denied Plaintiffs' request explaining that Medina TV broadcasts a government access channel where government employees provide information to the public, which included instances where Medina's Mayor gave information about the 2020 Ballot Initiative. (Compl. ¶ 30, ECF No. 1. *See also* Compl. Ex. 1, ECF No. 1-3.) Medina TV clarified it does not broadcast a public access channel. (Compl. Ex. 1, ECF No. 1-3.)

Finally, Plaintiffs allege Medina, through trademark infringement, confused Medina voters regarding the 2020 Ballot Initiative. (Compl. ¶ 90, ECF No. 1.) According to Plaintiffs, in opposing the 2020 Ballot Initiative, Medina used the same colors and confusingly similar slogans as those who supported the 2020 Ballot Initiative to confuse "voters into believing that [Medina's] campaign was being put on by the proponents" of the 2020 Ballot Initiative. (*Id.* at ¶¶ 90-93.)

Ultimately, the 2020 Ballot Initiative passed – given the wording of the measure, this meant that Medina could not participate in the joint courthouse project without a majority of "qualified electors" in Medina voting in favor of such participation. (*Id.* at ¶¶ 21, 63.) Plaintiffs allege that despite the passing of the 2020 Ballot Initiative, Medina utilized city resources and spent taxpayer money to continue the joint courthouse project without further public vote. (*Id.* at ¶¶ 65-77.)

**B. Conflict After the November 2020 Election**

In December 2020, Medina, through Medina City Council, generated a ballot initiative to place on Medina's May 2021 special election ballot (hereinafter "2021 Ballot Initiative"). (*Id.* at ¶¶ 80-

84.) The 2021 Ballot Initiative asked the public to vote on whether Medina could utilize public funds and city resources for the joint courthouse project and required a majority of voters to approve of Medina's involvement in the joint courthouse project. (*Id.* at ¶¶ 85-86.) Plaintiffs assert the 2021 Ballot Initiative was in violation of the 2020 Ballot Initiative which required a majority of "qualified electors" to vote in favor of Medina participating in the joint courthouse project, not just a simple majority of voters. (*Id.* at ¶¶ 86, 94.)

In January 2021, Plaintiffs filed a taxpayer complaint against Medina in Medina County Court of Common Pleas alleging Medina violated several Medina City Ordinances, violated numerous Ohio laws, and misapplied Medina city funds. (*Id.* at ¶ 95. *See also* Answer Ex. C, ECF No. 3-3.) *See also City of Medina, Ohio ex rel. Jocke v. City of Medina*, Medina C.P. No. 21CIV0083, Amended Complaint (Apr. 22, 2021). Plaintiffs sought a permanent injunction against Medina such that it could not act according to the 2021 Ballot Initiative if passed. (Answer Ex. C at ¶¶ 167-192, ECF No. 3-3.) *See also City of Medina, Ohio ex rel. Jocke v. City of Medina*, Medina C.P. No. 21CIV0083, Amended Complaint at ¶¶ 167-192 (Apr. 22, 2021). Medina answered the taxpayer complaint and counterclaimed seeking declaratory judgment that the 2020 Ballot Initiative was: (1) unconstitutional; (2) violates municipal charters; and (3) impairs Medina's contract rights. (Compl. ¶¶ 96-97, ECF No 1. *See also* Answer Ex. D 14-21, ECF No. 3-4.) *See also City of Medina, Ohio ex rel. Jocke v. City of Medina*, Medina C.P. No. 21CIV0083, Answer & Counterclaim (May 6, 2021). Plaintiffs claim Medina's counterclaims seeking declaratory judgment were brought in retaliation for Plaintiffs' speech against the joint courthouse project and forced "three individual citizens to incur the expense and cost to prove the validity" of the 2020 Ballot Initiative while "seeking to impose personal liability on Plaintiffs for the passage" of the 2020 Ballot Initiative. (Compl. ¶ 98, ECF No. 1.) Plaintiffs also assert that within numerous

lawsuits between Plaintiffs and Medina heard before Ohio state court venues, Medina made inconsistent statements leading to the improper dismissal of many of Plaintiffs' state law claims. (*Id.* at ¶¶ 100-118.)

Finally, with respect to the 2021 Ballot Initiative and public vote, Plaintiffs allege Medina, through trademark infringement, confused Medina voters regarding the 2021 Ballot Initiative. (*Id.* at ¶ 90.) According to Plaintiffs, Medina used the same colors and confusingly similar slogans as those who opposed the 2021 Ballot Initiative to confuse "voters into believing that [Medina's] campaign was being put on by the . . . opponents" of the 2021 Ballot Initiative. (*Id.* at ¶¶ 90-93.) Ultimately, the 2021 Ballot Initiative passed – this meant that Medina could participate in the joint courthouse project. (*Id.* at ¶¶ 85, 94.)

In sum, Plaintiffs claim Medina's various activities, done in opposition of Plaintiffs' campaign against Medina's involvement in the joint courthouse project, violated Plaintiffs' First Amendment rights of freedom of speech, freedom of assembly, and freedom of association, Fourteenth Amendment equal protection and due process rights, and Fifth Amendment due process rights. (*Id.* at ¶¶ 119-197.) Medina denies these claims. (*See generally* Answer, ECF No. 3.) After the pleadings closed, Plaintiffs and Medina each filed a motion for judgment on the pleadings. (*See* Pls.' Mot. for J. on the Pleadings, ECF No. 16; Def.'s Mot. for J. on the Pleadings, ECF No. 15.) The issues are fully briefed and ripe for this Court's review. (*See* Opp'n to Pls.' Mot. for J. on the Pleadings, ECF No. 17; Reply in Supp. of Pls.' Mot. for J. on the Pleadings, ECF No. 22; Opp'n to Def.'s Mot. for J. on the Pleadings, ECF No. 20; Reply in Supp. of Def.'s Mot. for J. on the Pleadings, ECF No. 21.)

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to Fed. R. Civ. P. 12(c) is reviewed under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). Therefore, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

This Court does not need "detailed factual allegations," but for factual matter to be sufficient it must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering either "labels and conclusions or a formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or even "naked assertion[s] devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" as this Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678-79 (quoting *Twombly*, 550 U.S. at 555).

In addition to factual matter needing to be sufficient, it also must be plausible, such that this Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility and probability are not the same, however. *Id.* Rather, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The determination of whether a complaint states plausible

claims for relief typically requires "the reviewing court to draw on its judicial experience and common sense" unless "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Finally, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)) (internal quotation marks omitted). In sum, "[w]hen ruling on a defendant's motion to dismiss on the pleadings, a district court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler*, 862 F.3d at 574-75 (internal citations and quotation marks omitted).

Finally, Federal Rule of Civil Procedure 12(c) requires this Court to convert a motion for judgment on the pleadings to a motion for summary judgment "where matters outside the pleadings are presented to and not excluded by the court." *Clark v. Stone*, 998 F.3d 287, 296 (6th Cir. 2021). However, this Court may "consider documents that are attached to the pleadings, as well as public records, matters in the record of the case, and exhibits attached to the motion so long as they are 'referred to in the complaint and are central to the claims contained therein'" without converting the motion for judgment on the pleadings to a motion for summary judgment. *Whirlpool Corp. v. Equity Mgmt., Inc.*, No. 20-2062, 2021 U.S. App. LEXIS 33032, at *6 (6th Cir. Nov. 4, 2021) (quoting *Clark*, 998 F.3d at 296). This Court has only considered the pleadings, exhibits attached to the pleadings, and the public records of Ohio state court cases between Plaintiffs and Medina,

as evidenced by the citations provided *supra*. The currently pending motions, therefore, are not converted to motions for summary judgment and will be analyzed under the above enumerated standard for motions for judgment on the pleadings.

## III.   DISCUSSION

All of Plaintiffs' claims are brought against Medina alone. Therefore, the following limitations on claims against municipalities for deprivation of constitutional rights apply. Pursuant to 42 U.S.C. § 1983, any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .." Municipalities and other local government bodies are considered "persons" for the purposes of § 1983, such that local governments may be liable for depriving, under color of law, individuals of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality, however, "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. In other words, a municipality is not liable under § 1983 "*solely* because it employs a tortfeasor." *Id.* Bluntly, "under § 1983, local governments are responsible only for their *own* illegal acts. . . . They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (*emphasis* in original) (internal citations and quotation marks omitted).

Instead, municipalities are "liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 692). "Official municipal policy includes the decisions of a government's lawmakers, the acts of

its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Accordingly, a properly alleged municipal liability claim of deprivation of constitutional rights alleges "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio*, 747 F.3d at 387 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (internal quotation marks omitted). Given this legal framework, many of Plaintiffs' claims fail at the outset.

Plaintiffs' second claim for relief argues that Medina violated Plaintiffs' constitutional rights when Plaintiffs were precluded from gathering petition signatures or distributing political material in public spaces, like sidewalks and streets during Farmer's Market events, despite Medina officials distributing information in the public space Plaintiffs were excluded from. (Compl. ¶¶ 128-134, ECF No. 1.) Even with this Court assuming the veracity of all factual material contained in the complaint and viewing the complaint in the light most favorable to Plaintiffs, the complaint fails to provide any well-pled factual allegations indicating this alleged preclusion was accomplished according to an official policy or legislative enactment, was ratified by anyone with decision making authority, occurred because the officer who allegedly precluded them was inadequately trained, or was the result of custom in Medina to tolerate constitutional rights violations. Without any well-pled facts connecting Medina itself to the alleged constitutional rights violations that occurred at the Farmer's Market events, Plaintiffs' claims are not plausible.

Plaintiffs' fifth, sixth, seventh, eighth, and ninth claims assert Medina violated Plaintiffs' constitutional rights when: 1) Medina sought to determine the constitutionality of the 2020 Ballot Initiative in an Ohio state court action; 2) Medina continued to utilize public resources for the joint

courthouse project despite the 2020 Ballot Initiative passing; 3) Medina failed to take action against itself for allegedly violating the 2020 Ballot Initiative; 4) Medina made allegedly false statements in Ohio state court cases; and 5) Medina "used infringing slogans and trade dress" in campaigns opposing the 2020 Ballot Initiative and supporting of the 2021 Ballot Initiative to confuse voters. (*Id.* at ¶¶ 154-197.)

The overarching problem with each of these claims is the Plaintiffs do not actually build a bridge constructed of logic and reason between any of these actions by Medina and Plaintiffs' constitutional rights. Besides generally naming constitutional rights, reciting the elements of 42 U.S.C. § 1983, and declaring which of Medina's actions Plaintiffs did not like, there is no clear connection between Medina and a deprivation of constitutional rights. Plaintiffs do not allege anywhere in their complaint, and this Court cannot reasonably infer, that any illegal policies exist within Medina generally, let alone policies that would lend to these specified instances of alleged deprivation of constitutional rights; that ratification of an illegal activity occurred by an official with decision making power; that Medina failed to adequately train anyone; or that Medina engages in tolerating constitutional violations customarily. Even with this Court assuming the veracity of all factual material contained in the complaint, without any facts connecting Medina's alleged activities directly to Plaintiffs' constitutional rights utilizing the legal requirements of *Monell* for municipalities accused of violating individual constitutional rights, Plaintiffs' claims are not plausible. These claims read more as unadorned Medina-unlawfully-harmed-us allegations and naked assertions devoid of support, neither of which this Court must accept as true.

For these reasons, Plaintiffs have failed to provide sufficient factual matter to state plausible claims for relief as to counts two, five, six, seven, eight, and nine of their complaint. Although

Plaintiffs have extensively detailed their grievances with respect to Medina, Plaintiffs can, undoubtedly, prove no set of facts that would entitle them to relief as to these claims.[1]

In their first claim for relief, Plaintiffs allege Medina's excluding Jocke from the "public meeting" at Medina's City Hall where "[m]embers of the public," government officials and employees of both Medina and Medina County, and members of the press attended violated his First Amendment right to freedom of speech, his First Amendment right to assemble, and his Fourteenth Amendment equal protection rights. (*Id.* at ¶¶ 119-127.)[2] For their third claim for relief, Plaintiffs assert that their First Amendment right to freedom of speech and Fourteenth Amendment equal protection rights were violated when Plaintiffs were prevented from presenting information and "opposing views on broadcasts by Medina TV" on Medina TV. (*Id.* at ¶¶ 135-145.) Finally, in their fourth claim for relief, Plaintiffs alleges Medina violated their First Amendment rights of freedom of speech and freedom of association as well as Fourteenth Amendment equal protection rights by prosecuting Plaintiffs due to political action. (*Id.* at ¶¶ 146-153.) In this claim, Plaintiffs allege that because Plaintiffs publicly criticized Medina, Medina filed a counterclaim against them individually in a taxpayer lawsuit resulting in a "chilling effect on the Plaintiffs' First Amendment rights." (*Id.* at ¶ 148.)

Once again, with respect to these claims, besides generally naming constitutional rights and reciting the elements of 42 U.S.C. § 1983, Plaintiffs did not clearly connect Medina to a deprivation

---

[1] Medina also argues that counts five, six, seven, and eight should be dismissed for lack of standing. (Def.'s Mot. for J. on the Pleadings 17-19, ECF No. 15.) Although this Court has doubts regarding Plaintiffs' standing to bring these claims, this Court declines to analyze standing given the claims' failure under the *Monell* standard.

[2] In the body of the complaint, Jocke generally alleges he was deprived "of his liberty under the Fifth Amendment of the U.S. Constitution" when he was forcibly removed from the "public meeting" and Medina's excluding him was done in retaliation for his "prior exercise of his freedom of speech and freedom of association under the First Amendment of the U.S. Constitution." (Compl. ¶¶ 41-42, ECF No. 1.) However, because Jocke did not actually assert claims to this effect when pleading the legal claims of the complaint, this Court will not analyze these conclusory statements regarding First Amendment retaliation or Fifth Amendment rights violations.

of constitutional rights. Plaintiffs do not allege anywhere in their complaint that any illegal policies exist within Medina generally, let alone policies that would lend to these specified instances of alleged deprivation of constitutional rights; that any official with final decision making authority ratified illegal actions; that Medina failed to adequately train anyone; or that Medina engages in tolerating constitutional violations customarily.

However, if this Court were to extend all possible latitudes to Plaintiffs and construe the complaint to suggest that an official with final decision making power – Medina's Mayor – ratified an illegal action when Jocke was escorted out of the press conference or when Medina filed a counterclaim in the taxpayer action, and that an illegal policy exists or Medina custom allows for the deprivation of constitutional rights when the public is precluded from presenting content on Medina TV, the law is clear: "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Therefore, the question is whether Plaintiffs have provided enough well-pled factual material such that it is plausible that Plaintiffs' First and Fourteenth Amendment rights were violated when Jocke was escorted out of Medina City Hall, when Plaintiffs were prohibited from airing information on Medina TV, and when Medina filed a counterclaim in a taxpayer action.

**A. First Amendment Freedom of Speech and Right to Assemble**

The First Amendment of the Constitution of the United States provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I. At the outset, this Court affirms that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468

U.S. 609, 622 (1984). In other words, "[t]he right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). Because freedom of speech and the right to peaceably assemble are inextricably joined, this Court will analyze them together, as our sister courts have before. *See Ramsek v. Beshear*, 468 F. Supp. 3d 904, 914-15 (E.D. Ky. 2020) ("Although the First Amendment protects several categories of rights, it is often difficult in practice to determine where one right ends and the next begins. This is particularly true with freedom of speech and freedom of assembly . . . Consequently, Courts typically evaluate free speech, assembly and petition claims under the same analysis.") (citing cases); *Intervarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F. Supp. 3d 785, 826 (E.D. Mich. 2021) (explaining a "close nexus between First Amendment rights is justified" because "[i]n order to effectively express a message or associate with others, individuals must in some way assemble").

Turning, then, to the First Amendment freedom of speech, and associated right to assemble: "The hallmark of the protection of free speech is to allow free trade in ideas – even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (internal citations and quotation marks omitted). First Amendment protections, however, "are not absolute" and "the government may regulate certain categories of expression consistent with the Constitution." *Id.* On the one hand "the government does not have a free hand to regulate private speech on government property." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). But on the other hand, "[s]imply because the government may own a piece of property, . . . does not mean that property is open to all types of expressive activity at all times." *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010).

To determine whether Medina violated Plaintiffs' First Amendment freedom of speech and right to assemble, this Court must engage in a three-step analysis: (1) determine whether Plaintiffs' speech is protected under the First Amendment; (2) if so, determine what type of forum is at issue and which constitutional standard to apply; and (3) determine "whether the government's prohibition on speech passes muster under the First Amendment." *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 559 (6th Cir. 2007). The question before this Court is not whether Plaintiffs' speech is protected by the First Amendment, but rather what fora a press conference at Medina City Hall and Medina TV are and whether Medina's restrictions of Plaintiffs' speech, as pled by Plaintiffs, violated the constitutional standard for each forum.

There are three types of public fora: (1) traditional public forum; (2) designated public forum; and (3) limited public forum. *Miller*, 622 F.3d at 534 (citing *Summum*, 555 U.S. at 469-70). Traditional public fora are those locations "by 'tradition or by government fiat' are open to public assembly and debate," such as sidewalks and parks. *Miller*, 622 F.3d at 534 (quoting *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007)). For traditional public fora, the government may exclude speech "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). "Reasonable time, place, and manner restrictions are allowed" but "restrictions based on viewpoint are prohibited." *Summum*, 555 U.S. 460 at 469.

Designated public fora occur when the government "opens a piece of public property to the public at large, treating as if it were a traditional public forum." *Miller*, 622 F.3d at 534. "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Summum*, 555 U.S. 460 at 469-70.

Limited public fora may be created by the government for limited use "by certain groups or dedicated solely to the discussion of certain subjects." *Id.* at 470. In limited public fora, the government "may impose restrictions on speech that are reasonable and viewpoint-neutral." *Id. See also Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 ("The restriction must not discriminate against speech on the basis of viewpoint, . . . and the restriction must be reasonable in light of the purposes served by the forum.").

Finally, a nonpublic forum is a government-owned property "that is not by tradition or governmental designation 'a forum for public communication.'" *Miller*, 622 F.3d at 535 (quoting *Helms*, 495 F.3d at 256). In nonpublic fora, the government may limit speech "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Helms*, 495 F.3d at 256.

This Court will analyze the press conference at Medina City Hall and Medina TV under this framework.

1. <u>Press Conference</u>

The press conference at Medina City Hall was akin to a City Council meeting. The Sixth Circuit Court of Appeals has held that City Council meetings are not a "traditional public for[um] like parks and streets" where "the government's regulatory powers are at their weakest." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518-19 (6th Cir. 2019) (quoting *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)) (internal quotation marks omitted). City Council meetings, instead, are "designated" and "limited" public fora: "'designated' because the government has 'intentionally open[ed]' it 'for public discourse,' and 'limited' because 'the State is not required to . . . allow persons to engage in every type of speech' in the forum." *Youkhanna*, 934 F.3d at 519 (quoting *Lowery* 586 F.3d at 432).

In this instance, the press conference was not actually designated, because it was not open for public discourse, as a City Council meeting typically is. In fact, Medina informed Plaintiffs the press conference, although conducted for the discussion of public business, was not a public meeting, pursuant to Ohio Revised Code and Medina's Codified Ordinances, such that the public was invited to attend by law given only Medina's Mayor and Medina's County Commissioner attended – no public body of Medina conducted the press conference. (*See* Compl. Ex. 3, ECF No. 1-5.) *See* Medina Codified Ordinances III-13 ("All meetings of Council, all meetings of Commissions and all other groups acting on a City matter shall be regulated in accordance with the Ohio Open Meeting Law) and R.C. 121.22 ("'Meeting' means any prearranged discussion of the public business of the public body by a majority of its members" while "public body" means boards, commissions, committees, council, or "similar decision-making body of any . . . municipal corporation" and "[a]ll meetings of any public body are declared to be public meetings open to the public at all times"). Therefore, the press conference can, at best, be a limited public forum – one which the government created for a dedicated purpose. Any restriction of public speech in that forum must have been reasonable in light of the purpose of the forum and viewpoint neutral.

The press conference was a designated slice of time whereby the government presented information directly to the press. Because it was nothing more – not a public meeting such that the public was invited to attend by law – restricting attendees to members of the press, rather than the public at large, was reasonable given the limited purpose of the forum.[3]

Additionally, Medina's restriction of public speech at the press conference is unquestionably viewpoint neutral in that the entire public was precluded from attending. (*See* Compl. Ex. 3 at 2,

---

[3] This Court will briefly note that restricting attendees of the press conference for the continuation of public health and safety measures given the Covid-19 pandemic served a compelling governmental interest at the ceiling and was objectively reasonable at the floor, meeting both the strict scrutiny standard for designated public fora as well as the reasonableness standard for limited public fora.

ECF No. 1-5 ("The only invitees are local media representatives").) Neither supporters nor opponents of the joint courthouse project from the public attended. Neither supporters nor opponents of the 2020 Ballot Initiative from the public attended. Of note, Plaintiffs attempt to cloud this conclusion with statements such as "[t]he public had been invited to a press conference" and "[m]embers of the public along with elected officials" of Medina and Medina County attended the press conference, likely to suggest Jocke personally was excluded from the press conference simply because of his viewpoint. (Compl. ¶¶ 121-122, ECF No. 1.) These statements, however, are nothing more than the "naked assertions devoid of further factual enhancement" this Court need not accept as true, especially when evidence Plaintiffs provided attached to their complaint contradict these assertions. This half-hearted attempt to provide life support to a dying claim fails at resuscitation.

In sum, this Court, in viewing the complaint in the light most favorable to Plaintiffs, drawing all inferences in favor of the Plaintiffs, and accepting all well-pled factual material as true, finds that the press conference at Medina's City Hall was a limited public forum and, in conjunction with this conclusion, finds that restrictions upon public speech at the press conference were viewpoint neutral and reasonable given the purpose of the forum. Therefore, even if Plaintiffs could prove that an official with final decision-making authority ratified removing Jocke from the press conference such that Medina could be liable for violating Jocke's First Amendment freedom of speech and right to assemble, Plaintiffs have not provided well-pled factual material such that it is plausible Medina actually violated Jocke's First Amendment rights when he was escorted out of City Hall and precluded from attending the press conference. Without a plausible constitutional violation, Plaintiffs' claim that Medina violated First Amendment rights when Jocke was escorted from the press conference fails.

2.  Medina TV

Upon assuming the veracity of the factual material pled by Plaintiffs, Medina TV also can only be classified as a limited public forum. Medina TV itself explained to Plaintiffs, in writing, that the channel is a government access channel whereby government officials provide information to the public and government proceedings are broadcast. (*See* Compl. Ex. 1, ECF No. 1-3.) In certain instances, political candidates provide information on the channel regarding why they are running for office. (*Id.*) However, Medina TV is not a public access channel and is not a forum open to public comment. (*Id.*) Assuming Medina TV was created by the government, its use was dedicated solely to the discussion of certain topics – the broadcast of government business. Because Medina TV is clearly a limited public forum, any restriction of public speech in that forum must have been reasonable in light of the purpose of the forum and viewpoint neutral.

Medina TV's designated purpose is broadcasting government information and government proceedings to the public. Restricting all members of the public, regardless of viewpoint, from broadcasting material on Medina TV prevents a potential unfettered onslaught of widely varied material, some of which would likely be irrelevant to Medina's business. This restriction is reasonable given the limited purpose of Medina TV. Furthermore, the restriction of speech broadcast on Medina TV is indisputably viewpoint neutral as no member of the public is invited to broadcast information on Medina TV. Neither supporters nor opponents of the joint courthouse project from the public broadcast information on Medina TV. Neither supporters nor opponents of the 2020 Ballot Initiative from the public broadcast information on Medina TV.

In viewing the complaint in the light most favorable to Plaintiffs, drawing all inferences in favor of the Plaintiffs, and accepting all well-pled factual material as true, this Court finds that Medina TV is a limited public forum and, in conjunction with this conclusion, finds that

restrictions upon public speech broadcast through Medina TV were viewpoint neutral and reasonable given the purpose of the forum. Therefore, even if Plaintiffs could prove that an illegal policy exists or Medina custom allows for the deprivation of constitutional rights when the public is precluded from broadcasting information on Medina TV, Plaintiffs have not provided well-pled factual material such that it is plausible Medina actually violated Plaintiffs' First Amendment freedom of speech and right to assemble when they were precluded from broadcasting information over Medina TV. Without a plausible constitutional violation, Plaintiffs' claim that Medina violated First Amendment rights when Plaintiffs were precluded from broadcasting information on Medina TV fails.

## B.  First Amendment Retaliation

Turning now to Plaintiffs' claim that their First Amendment rights were violated when Medina filed a counterclaim in a taxpayer action. Although inartfully pled, this Court infers that Plaintiffs' claim is one of First Amendment retaliation given the allegation that Medina's "counterclaim in the taxpayer lawsuit . . . was brought against Plaintiffs personally as retaliation" for publicly opposing the joint courthouse project resulting in "a chilling effect on the Plaintiffs' First Amendment rights." (Compl. ¶ 148, ECF No. 1.) To prove a First Amendment retaliation claim, Plaintiffs must have pled sufficient facts to establish that "1) the plaintiff[s] engaged in constitutionally protected conduct; 2) an adverse action was taken against the plaintiff[s] that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff[s'] protected conduct." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)) (internal quotation marks omitted). Even without this Court addressing the inherent issues in Plaintiffs' suggestion that counterclaims to a lawsuit Plaintiffs

themselves filed chills speech, Plaintiffs have not provided well-pled factual material such that it is plausible Medina's filing of a counterclaim was motivated, at least in part, by Plaintiffs' prior speech.

First, Ohio Rule of Civil Procedure 13(A) requires a responsive pleading to "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . .." Civ.R. 13(A). The subject matter of Plaintiffs' taxpayer lawsuit against Medina, in the broadest sense, is the joint courthouse project. (*See* Answer Ex. C, ECF No. 3-3.) *See also City of Medina, Ohio ex rel. Jocke v. City of Medina*, Medina C.P. No. 21CIV0083, Amended Complaint (Apr. 22, 2021). In the taxpayer lawsuit, Plaintiffs discuss the 2020 Ballot Initiative at length and take issue with Medina's activities since its passing while also seeking a permanent injunction such that Medina would be precluded from acting according to the 2021 Ballot Initiative, if passed. *See id.* Medina's counterclaim seeks declaratory judgment that the 2020 Ballot Initiative is invalid under the Constitution of Ohio. (Answer Ex. D 14-21, ECF No. 3-4.) *See also City of Medina, Ohio ex rel. Jocke v. City of Medina*, Medina C.P. No. 21CIV0083, Answer & Counterclaim (May 6, 2021). Medina's counterclaim was necessarily a compulsory counterclaim to Plaintiffs' taxpayer lawsuit – the 2020 Ballot Initiative is one of the transactions or occurrences that is the subject matter of Plaintiffs' taxpayer complaint, as well as Medina's counterclaim. Plaintiffs opened the door and invited Medina in. Objectively, Medina filing the declaratory judgment counterclaim was not motivated by Plaintiffs' prior speech but was motivated by the law. Plaintiffs have not provided any well-pled facts to the contrary.

Second, Plaintiffs make much ado about Medina seeking fees and costs against them individually as the bedrock of their claim that Medina's counterclaim is direct retaliation. (*See*

Pls.' Mot. for J. on the Pleadings 2, ECF No. 16; Mem. in Supp. of Pls.' Mot. for J. on the Pleadings 2, 7, 9, 11-13, ECF No. 16-1; Reply in Supp. of Pls.' Mot. for J. on the Pleadings 6-10, 19, ECF No. 22.) Medina, however, did not counterclaim against Plaintiffs in tort or breach of contract seeking damages. Medina's counterclaim was one for declaratory judgment. (Answer Ex. D 14-21, ECF No. 3-4.) *See also City of Medina, Ohio ex rel. Jocke v. City of Medina*, Medina C.P. No. 21CIV0083, Answer & Counterclaim (May 6, 2021). "A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8 (citing *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312, 98 N.E.2d 840 (1951)). "The purpose of a declaratory judgment action is to dispose of 'uncertain or disputed obligations quickly and conclusively . . ..'" *Heasley* at ¶ 8 (quoting *Ohio Farmers Indemn. Co. v. Chames*, 170 Ohio St. 209, 213, 163 N.E.2d 367 (1959)). While declaratory judgment actions in Ohio may result in monetary awards (*see Jeppe v. Blue Cross of Northeast Ohio*, 67 Ohio App.2d 87, 92, 425 N.E.2d 947 (1980) ("[w]hile there is no express statutory provision for the granting of a money judgment in a declaratory judgment action, such relief may be granted so long as it is prayed for and warranted by the proof")), the weight of Medina's counterclaim seeks court declaration on the constitutionality of the 2020 Ballot Initiative under Ohio law. Medina's request for a monetary award, incidental to the underlying purpose of the counterclaim, does not carry the heavy weight Plaintiffs suggest it does.

Plaintiffs filed a motion for judgment on the pleadings asking this Court to enter judgment that Medina violated their constitutional rights in filing the counterclaim against them in the taxpayer action. For the reasons articulated above, this Court cannot provide Plaintiffs with the judgment they request. This Court finds it particularly troubling that Plaintiffs' filings before this Court

spend a great deal of effort explaining why the 2020 Ballot Initiative is valid under Ohio law and, conversely, why Medina's counterclaim for declaratory judgment is legally improper under Ohio law. (Mem. in Supp. of Pls.' Mot. for. J on the Pleadings, ECF No. 16-1; Reply in Supp. of Pls.' Mot. for J. on the Pleadings ECF No. 22.) These are state law issues for a court sitting under the law of Ohio to determine.

It is this Court's task to determine whether it is plausible Medina violated Plaintiffs' fundamental rights under the Constitution of the United States. With respect to this issue, Plaintiffs do very little to support their claim. In their materials, Plaintiffs neither cite the legal support for their claim of First Amendment retaliation nor tie factual allegations of their complaint, rather than conclusory statements, to the legal elements of their claim as a demonstration that their complaint pleads a plausible claim of constitutional magnitude against Medina. (*See* Mem. in Supp. of Pls.' Mot. for. J on the Pleadings, ECF No. 16-1; Reply in Supp. of Pls.' Mot. for J. on the Pleadings ECF No. 22.) Given this failure, and in thorough review of the complaint, this Court cannot find that Plaintiffs have provided well-pled factual allegations such that it is plausible Medina retaliated against Plaintiffs for engaging in speech protected by the First Amendment when it filed a counterclaim for declaratory judgment in a taxpayer action Plaintiffs initiated. Because Plaintiffs have not plausibly pled an underlying constitutional violation, Plaintiffs' fourth claim for relief against Medina, with respect to violations of First Amendment rights, fails.

## C. Fourteenth Amendment Equal Protection Right

The Fourteenth Amendment Equal Protection Clause of the Constitution of the United States provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. "The Clause embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th

Cir. 2006).  "The threshold element of an equal protection claim is disparate treatment . . .." *Id.*
"To state an equal protection claim, a plaintiff must adequately plead that the government treated
the plaintiff disparately as compared to similarly situated persons and that such disparate treatment
either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-
Ethical Reform, Inc. v. Napolitano*, 548 F.3d 365, 379 (6th Cir. 2011).

Although Plaintiffs claim they were treated disparately as compared to similarly situated
individuals when they were prevented from attending the press conference at Medina's City Hall
or when they were precluded form broadcasting material on Medina TV or when Medina filed the
declaratory judgment counterclaim in the taxpayer action, Plaintiffs do not provide well-pled
factual material to indicate they were treated differently than any other individual member of the
public. "When evaluating whether parties are similarly situated, 'courts should not demand exact
correlation, but should instead seek relevant similarity.'" *EJS Props., LLC v. City of Toledo*, 698
F.3d 845, 865 (6th Cir. 2012) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). No
other individual member of the public was permitted to attend the press conference at Medina's
City Hall. No other individual member of the public was permitted to broadcast material on Medina
TV. Plaintiffs do not point to any other taxpayer lawsuit with the 2020 Ballot Initiative at issue
where Medina did not assert a counterclaim. Plaintiffs have not otherwise identified any similarly
situated member of the public who Medina treated differently than Plaintiffs. Without this
showing, Plaintiffs' equal protection claims fail at the outset without further analysis.

In viewing the complaint in the light most favorable to Plaintiffs, drawing all inferences in
favor of the Plaintiffs, and accepting all well-pled factual material as true, this Court finds that
even if Plaintiffs could prove that an official with final decision-making authority ratified
removing Jocke from the press conference at Medina's City Hall, or that Medina custom allows

for the deprivation of constitutional rights when the public is precluded from presenting content on Medina TV or when Medina filed a counterclaim in the taxpayer action, Plaintiffs have not provided well-pled factual material such that it is plausible Medina actually violated Plaintiffs' Fourteenth Amendment Equal Protection rights. Without plausible constitutional violations, Plaintiffs' claims that Medina violated their Fourteenth Amendment Equal Protection rights fail.

### D. Amending Pleadings

In their opposition to Medina's motion for judgment on the pleadings, Plaintiffs "request leave to amend their Complaint if the Court finds that any of the causes of action are not adequately pled." (Opp'n to Def.'s Mot. for J. on the Pleadings 10, ECF No. 20.) Although leave to amend should be freely given when "justice so requires," Fed. R. Civ. P. 15(a)(2), "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *La. Sch. Emp. Ret. Sys. V. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)). The request is one sentence devoid of legal support. Plaintiffs have not given this Court any further information regarding amendment. Plaintiffs are not granted leave to amend their complaint.

### IV. CONCLUSION

It is clear to this Court that tension exists between Plaintiffs and Medina. Plaintiffs do not want Medina to participate in the joint courthouse project, while Medina wishes to do so. There is no question that both parties have presumed the motivation of specific actions of the opposing party. This Court is objective, however. In painstakingly reviewing every pleading, brief, and attached exhibit, providing every reasonable inference in Plaintiffs' favor, assuming the veracity of every well-pled factual allegation, and viewing everything in the light most favorable to Plaintiffs, this

Court cannot conclude that Plaintiffs have met the requisite burden for this Court to either deny Medina's motion for judgment on the pleadings or grant Plaintiffs' motion for judgment on the pleadings. Plaintiffs have not provided well-pled factual allegations such that it is plausible Medina violated any of Plaintiffs' constitutional rights as pled.

Both Plaintiffs and Medina have provided enough information to this Court for this Court to confidently reach this conclusion within the legal standards by which it must abide. There is no just reason for this matter to continue. Medina's motion for judgment on the pleadings is GRANTED in full. Plaintiffs' motion for judgment on the pleadings is DENIED. This matter is hereby dismissed, in its entirety, with prejudice.

IT IS SO ORDERED.

DATE: October 13, 2022                    /s/ John R. Adams_____
                                          Judge John R. Adams
                                          UNITED STATES DISTRICT COURT